UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LIBORIO VALDEZ, #923898,

        Plaintiff,

v.

UNKNOWN BRAY and
RICHARD DESROCHERS,

        Defendants.
_____/

Case No. 2:21-cv-58

Hon. Jane M. Beckering
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies. (ECF No. 19.)

Plaintiff — state prisoner Liborio Valdez — filed suit pursuant to 42 U.S.C. § 1983 on March 26, 2021. In his verified complaint, Valdez asserts that while he was confined at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, Corrections Officer (CO) Bray and Sergeant (Sgt.) Desrochers utilized excessive force against him in violation of his Eighth Amendment rights.[1] More specifically, Valdez claims that after URF deployed its Emergency Response Team (ERT) on September

---

[1] Valdez initially named Defendants as "Correctional Officer Unknown John Doe" and "Correctional Officer Unknown Sergeant John Doe." (ECF No. 1, PageID.5, 7.) Valdez subsequently amended his complaint to name CO Bray and Sgt. Desrochers as Defendants. (ECF No. 6 (Order Granting Motion to Amend).)

14, 2020 to counter a riot, CO Bray restrained Valdez with zip ties in a manner that cut off circulation to Valdez's hands, left Valdez in the zip ties for more than three and a half hours, and ignored Valdez's requests to use the restroom, causing him to urinate on himself. (ECF No. 1, PageID.5-6.) Valdez says that when he asked Sgt. Desrochers for help with the restraints, Desrochers fired a pepper ball gun into his back more than three times. (*Id.*, PageID.7-8.)

Defendants now move for summary judgment, asserting that Valdez did not properly exhaust his administrative remedies. (ECF No. 19.) More specifically, Defendants argue that Valdez did not appeal his grievance concerning the alleged excessive force through Step III of the Michigan Department of Corrections' grievance procedure, and that even if he had, Valdez filed his grievance with the Marquette Branch Prison (MBP) when he was required to file it with URF. (ECF No. 20, PageID.77-78.) In response, Valdez asserts that he was not required to appeal the relevant grievance because it was rejected as non-grievable. (ECF No. 21, PageID.113.) He further asserts that he was not required to file his grievance at URF because he was not grieving the facility itself, and because Defendants were part of an ERT summoned from multiple facilities. (*Id.*, PageID.113-114.)

The undersigned respectfully recommends that the Court deny Defendant's motion for summary judgment based on Valdez's failure to exhaust his administrative remedies. Although there are no genuine issues of material fact at this stage relating to exhaustion, Defendants are not entitled to summary judgment

because they have not established that Valdez failed to exhaust available administrative remedies.

## II.     Factual Allegations

Valdez alleges that on September 13, 2020, three inmates in his housing unit at URF, the Neebish Unit, engaged in a physical altercation. (ECF No. 1, PageID.3.) When staff responded, they deployed their tasers, hitting one of the inmates in the face and rendering him unconscious. Valdez says that when inmates began to question staff about the unconscious inmate, worrying that he was deceased, a staff member responded by referring to the inmate as "It" and saying that "It doesn't matter." (*Id.*) When nearby inmates stated that Black lives matter, the staff member allegedly responded, "[t]hey don't up here." Valdez says that the inmates responded by chanting "Black lives matter," banging the windows in unison. (*Id.*, PageID.4.) Valdez says that staff then abandoned their posts, and that some of the inmates took the opportunity to destroy the windows in Neebish Unit. This destruction lasted approximately two hours. (*Id.*)

After some of the inmates destroyed the windows in Neebish Unit, Valdez says that URF deployed an ERT. The ERT initially stood around the perimeter of the unit and released teargas into the unit. (*Id.*, PageID.4-5.) Then, in the early morning hours of September 14, 2020, the ERT entered Neebish Unit. (*Id.*, PageID.5.) Valdez says that each inmate was removed from their cell and restrained with zip ties. Defendant CO Bray restrained Valdez. Valdez says that he immediately noticed the zip ties were too tight, and asked Bray to loosen them, telling Bray that the zip ties

3

were causing discomfort and pressure. (*Id.*) Bray responded by stating "[y]ou should have thought about that before destroying Neebish Unit." When Valdez told Bray that it felt as though the ties were cutting off circulation to his hands, he says that Bray stated: "The same hands you destroyed my unit with. Just relax you['re] a big boy." (*Id.*)

After CO Bray declined to loosen his zip ties, Valdez says that CO Bray placed him outside in the cold. (*Id.*, PageID.6.) Valdez then told Bray that his clothes were wet, and that he needed to use the restroom. Bray allegedly responded by stating: "You are already wet so what is the difference if you wet your pants." (*Id.*) After approximately thirty minutes of sitting in the cold, Valdez says that he was forced to urinate on himself. After more than forty-five minutes, Valdez says that CO Bray took him to the URF Eastside Gym. (*Id.*) On the way to the gym, Valdez again pleaded with Bray to loosen the zip ties. He told Bray that he was "feeling burning and tingling in his hands and wri[sts]." Bray again brushed Valdez's complaints off and told him to take it up with one of the officers in the gym. (*Id.*)

After sitting in the gym for an unspecified amount of time, Valdez stood and informed Defendant Sgt. Desrochers that his hands were cold and that he could not feel them. (*Id.*, PageID.7.) Valdez asked Sgt. Desrochers to loosen the zip ties. In response, Valdez alleges that Sgt. Desrochers told him to sit down, or that Desrochers would shoot him with a pepper ball gun. (*Id.*) Valdez again asked Desrochers to loosen the zip ties. He told Desrochers that the zip ties had been on his wrists for an hour and a half, and that he could not feel his fingers. (*Id.*) Valdez says that he asked

4

Desrochers to contact health care. Before Valdez had finished with his pleas, Desrochers fired two or three rounds from the pepper gun into his back. (*Id.*) Valdez fell to the floor, landing on his shoulder. For the next three and a half hours, Valdez says that he pleaded for help, or medical attention. (*Id.*, PageID.8.) He says that every time he started to stand, Sgt. Desrochers shot him with additional round from the pepper gun. Afterwards, Valdez was transferred to MBP. Valdez says that he was left in his soiled clothing for four days. (*Id.*)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[2]   If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A

prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance procedure will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross v. Blake*, 578 U.S. 632, 644 (2016).

V.     Analysis

In his complaint, Valdez asserts that he exhausted his claims via grievance MBP-20-09-1090-27B.  (ECF No. 1, PageID.8.)  Defendants assert that the MDOC's grievance procedure was the appropriate administrative remedy for Valdez's claims (ECF No. 20, PageID.77-78), but that grievance MBP-20-09-1090-27B did not serve to exhaust the claims for two reasons: (1) the grievance was not appealed through Step III of the grievance procedure, and (2) the grievance was not filed with the proper

7

facility — Valdez complained of events occurring at URF but filed his grievance at MBP (*id.*, PageID.78). Valdez says that he was not required to appeal grievance MBP-20-09-1090-27B because it was rejected as non-grievable. (ECF No. 21, PageID.112.) In response, Defendants assert that the grievance procedure was nonetheless available because Valdez had the opportunity to appeal the rejection. (ECF No. 22, PageID.120.)

As an initial matter, the undersigned finds that there are no genuine issues of material fact bearing on exhaustion in this case. Valdez does not assert that he appealed MBP-20-09-1090-27B to Step II or III of the MDOC's grievance procedure. (ECF No. 21, PageID.112.) Nor does Valdez contest that he filed the grievance at MBP and not URF, though he contends that he was not required to file the grievance at URF. (*Id.*, PageID.112-113.) Finally, a review of the Step I form for grievance MBP-20-09-1090-27B reveals that Valdez's grievance was rejected as non-grievable at Step I because it pertained to the prison population as a whole.³ (ECF No. 21-1, PageID.118.)

The Sixth Circuit has clearly established that a prisoner cannot be required to exhaust non-grievable issues. *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004) ("Although the record reflects that plaintiff filed grievances that were apparently accepted in error, plaintiff nonetheless cannot be required to exhaust administrative

---

³     A review of the Step I form also seems to reveal that Valdez grieved only Sgt. Deroschers. But Defendants do not address the omission of CO Bray from the grievance, nor does it appear that Valdez's claim against CO Bray would be grievable under the circumstances of this case.

remedies regarding non-grievable issues."); *Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006) (explaining that the fact that prison policy allowed the plaintiff to appeal the decision that his claims were non-grievable was "immaterial" because a prisoner need not pursue a remedy that the prison makes unavailable for his claims). And for the MDOC to instruct a prisoner that his claims fall outside of its grievance procedure and then assert that the claims are barred from litigation because the prisoner did not exhaust the same procedure belies logic. *Reeves v. Hobbs*, No. 11-6047, 2013 WL 5462147, at *6 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). Furthermore, it places the prisoner in a "proverbial 'Catch-22' situation." *Kelly v. Labelle*, No. 2:20-CV-00049, 2021 WL 2419569 (W.D. Mich. May 12, 2021), *report and recommendation adopted*, No. 2:20-CV-49, 2021 WL 2417104 (W.D. Mich. June 14, 2021). Because the PLRA only mandates the exhaustion of available administrative remedies, and the MDOC made the grievance procedure unavailable for Valdez's claims by informing Valdez that his complaint was non-grievable, Defendants are not entitled to summary judgment.

## VI.   Recommendation

The undersigned respectfully recommends that the Court deny Defendant's motion for summary judgment based on Valdez's failure to exhaust his administrative remedies. Although there are no genuine issues of material fact at

this stage, Defendants are not entitled to summary judgment because they have not established that Valdez failed to exhaust available administrative remedies.

If the Court accepts this recommendation, Valdez's excessive force claims against both Defendants will remain.

Dated:   July 22, 2022                                         /s/ *Maarten Vermaat*
                                                               MAARTEN VERMAAT
                                                               U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).