UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LIBORIO VALDEZ, #923898,

        Plaintiff,

v.

UNKNOWN BRAY and
RICHARD DESROCHERS,

        Defendants.
_____/

Case No. 2:21-cv-58

Hon. Jane M. Beckering
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendants' motion to dismiss based on Plaintiff's failure to prosecute his claims. (ECF No. 28.)

Plaintiff — state prisoner Liborio Valdez — filed suit pursuant to 42 U.S.C. § 1983 on March 26, 2021. In his verified complaint, Valdez asserted that while he was confined at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, Corrections Officer (CO) Bray and Sergeant (Sgt.) Desrochers utilized excessive force against him in violation of his Eighth Amendment rights.[1] More specifically, Valdez claimed that after URF deployed its Emergency Response Team (ERT) on September 14, 2020, CO Bray restrained Valdez with zip ties in a manner that cut off circulation

---

[1] Valdez initially named Defendants as "Correctional Officer Unknown John Doe" and "Correctional Officer Unknown Sergeant John Doe." (ECF No. 1, PageID.5, 7.) Valdez subsequently amended his complaint to name CO Bray and Sgt. Desrochers as Defendants. (ECF No. 6 (Order Granting Motion to Amend).)

to his hands, left Valdez in the zip ties for more than three and a half hours, and ignored Valdez's requests to use the restroom, causing him to urinate on himself. (ECF No. 1, PageID.5-6.)  When Valdez asked Sgt. Desroschers for help with the restraints, Valdez says that Desrochers fired a pepper ball gun into his back three times. (*Id.*, PageID.7-8.)

On February 16, 2022, Defendants moved for summary judgment based on Valdez's failure to exhaust his administrative remedies. (ECF No. 19.) Defendants argued that Valdez had not properly exhausted the Michigan Department of Corrections (MDOC) grievance process. (ECF No. 20, PageID.77-78.) Valdez responded, arguing that his claim was non-grievable, and the grievance process was therefore unavailable to him. (ECF No. 21, PageID.113.) After determining that Defendants had not met their burden of establishing that the grievance process was available to Valdez, the undersigned issued an R&R recommending that the Court deny Defendants' motion for summary judgment. (ECF No. 23, PageID.131-134.) The Court approved and adopted the undersigned's R&R on August 22, 2022. (ECF No. 24, PageID.135.)

Defendants now move to dismiss based on Valdez's failure to prosecute his claims. (ECF No. 28, PageID.141.) Defendants say that they planned to depose Valdez regarding his claims on November 22, 2022, but that when they sent a notice of the deposition to Valdez's last known address, the notice was returned as undeliverable. In addition, Defendants assert that this Court should dismiss Valdez's case because he failed to update his address.

The undersigned respectfully recommends that the Court grant Defendants' motion. The MDOC Offender Tracking System shows that Valdez was paroled on October 18, 2022, meaning that Valdez has failed to update his address with the Court or Defendants for over three months. Moreover, discovery closed December 21, 2022. The fact that Valdez did not update his address with Defendants means that in addition to blocking Defendants discovery efforts, Valdez neglected to make his own discovery efforts. As such, in the opinion of the undersigned, dismissal is appropriate.

## II.     Factual Allegations

Valdez's factual allegations were summarized as follows in the undersigned's July 22, 2022 R&R:

> Valdez alleges that on September 13, 2020, three inmates in his housing unit at URF, the Neebish Unit, engaged in a physical altercation. (ECF No. 1, PageID.3.) When staff responded, they deployed their tasers, hitting one of the inmates in the face and rendering him unconscious. Valdez says that when inmates began to question staff about the unconscious inmate, worrying that he was deceased, a staff member responded by referring to the inmate as "It" and saying that "It doesn't matter." (*Id.*) When nearby inmates stated that Black lives matter, the staff member allegedly responded, "[t]hey don't up here." Valdez says that the inmates responded by chanting "Black lives matter," banging the windows in unison. (*Id.*, PageID.4.) Valdez says that staff then abandoned their posts, and that some of the inmates took the opportunity to destroy the windows in Neebish Unit. This destruction lasted approximately two hours. (*Id.*)
>
> After some of the inmates destroyed the windows in Neebish Unit, Valdez says that URF deployed an ERT. The ERT initially stood around the perimeter of the unit and released teargas into the unit. (*Id.*, PageID.4-5.) Then, in the early morning hours of September 14, 2020, the ERT entered Neebish Unit. (*Id.*, PageID.5.) Valdez says that each inmate was removed from their cell and restrained with zip ties. Defendant CO Bray restrained Valdez. Valdez says that he immediately

3

> noticed the zip ties were too tight, and asked Bray to loosen them, telling Bray that the zip ties were causing discomfort and pressure. (*Id.*) Bray responded by stating "[y]ou should have thought about that before destroying Neebish Unit." When Valdez told Bray that it felt as though the ties were cutting off circulation to his hands, he says that Bray stated: "The same hands you destroyed my unit with. Just relax you['re] a big boy." (*Id.*)
>
> After CO Bray declined to loosen his zip ties, Valdez says that CO Bray placed him outside in the cold. (*Id.*, PageID.6.) Valdez then told Bray that his clothes were wet, and that he needed to use the restroom. Bray allegedly responded by stating: "You are already wet so what is the difference if you wet your pants." (*Id.*) After approximately thirty minutes of sitting in the cold, Valdez says that he was forced to urinate on himself. After more than forty-five minutes, Valdez says that CO Bray took him to the URF Eastside Gym. (*Id.*) On the way to the gym, Valdez again pleaded with Bray to loosen the zip ties. He told Bray that he was "feeling burning and tingling in his hands and wri[sts]." Bray again brushed Valdez's complaints off and told him to take it up with one of the officers in the gym. (*Id.*)
>
> After sitting in the gym for an unspecified amount of time, Valdez stood and informed Defendant Sgt. Desrochers that his hands were cold and that he could not feel them. (*Id.*, PageID.7.) Valdez asked Sgt. Desrochers to loosen the zip ties. In response, Valdez alleges that Sgt. Desrochers told him to sit down, or that Desrochers would shoot him with a pepper ball gun. (*Id.*) Valdez again asked Desrochers to loosen the zip ties. He told Desrochers that the zip ties had been on his wrists for an hour and a half, and that he could not feel his fingers. (*Id.*) Valdez says that he asked Desrochers to contact health care. Before Valdez had finished with his pleas, Desrochers fired two or three rounds from the pepper gun into his back. (*Id.*) Valdez fell to the floor, landing on his shoulder. For the next three and a half hours, Valdez says that he pleaded for help, or medical attention. (*Id.*, PageID.8.) He says that every time he started to stand, Sgt. Desrochers shot him with additional round from the pepper gun. Afterwards, Valdez was transferred to MBP. Valdez says that he was left in his soiled clothing for four days. (*Id.*)

(ECF No. 23, PageID.127-129.)

4

### III. Failure to Prosecute

The Court has authority to dismiss a case under Fed. R. Civ. P. 41(b) when a plaintiff fails to prosecute his case or to comply with rules, or a court order. It is well settled that the Court has inherent authority to dismiss *sua sponte* an action with prejudice for failure to prosecute. *Link v. Wabash R. Co.*, 370 U.S. 626, 629–30 (1962). As the United States Supreme Court explained:

> The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted. The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts. The power is of ancient origin, having its roots in judgments of nonsuit and non prosequitur entered at common law, e.g., 3 Blackstone, Commentaries (1768), 295—296, and dismissals for want of prosecution of bills in equity, e.g., id., at 451. It has been expressly recognized in Federal Rule of Civil Procedure 41(b), which provides, in pertinent part:
>
> "(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. * * *
>
> Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits."
>
> Petitioner contends that the language of this Rule, by negative implication, prohibits involuntary dismissals for failure of the plaintiff to prosecute except upon motion by the defendant. In the present case there was no such motion.
>
> We do not read Rule 41(b) as implying any such restriction. Neither the permissive language of the Rule—which merely authorizes a motion by the defendant—nor its policy requires us to conclude that it was the purpose of the Rule to abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking

>relief. The authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

*Id.* (footnotes omitted).

Valdez's last communication with this Court was his March 21, 2022 response in opposition to Defendants motion for summary judgment. To be fair, there was little for Valdez to do between the date of his response, and the Court's August 22, 2022 order adopting the undersigned's R&R and denying Defendants' exhaustion-based motion for summary judgment. But once the Court denied Defendants' motion, and set the discovery deadline for December 21, 2022, Valdez had the opportunity to serve discovery requests on Defendants, and the obligation to respond to Defendants' discovery requests. (*See* ECF No. 25, PageID.136 (Case Management Order).) Moreover, Valdez had the continuing responsibility to update his address with this Court should it change. W.D. Mich. LCivR 41.1 ("Failure of a plaintiff to keep the court apprised of a current address shall be grounds for dismissal for want of prosecution.")

Per the MDOC Offender Tracking System, Valdez was released on parole on October 18, 2022. *MDOC Offender Tracking System*, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=923898 (last visited Jan. 28, 2023). Per Defendants' motion to dismiss, they attempted to schedule a deposition of Valdez in accordance with the August 23, 2022 case management order, but were unable to get into contact with him. (ECF No. 28, PageID.142.) Defendants filed the present

6

motion to dismiss on December 21, 2022, and Valdez did not respond. While it seems likely that Valdez did not respond because Valdez did not receive Defendants' motion, it was Valdez's responsibility to update his address with the Court and Defendants. It is not the obligation of Defendants, nor this Court, to track down Valdez so that he may prosecute the case that he filed. Accordingly, the undersigned thinks it appropriate to dismiss this action.

## IV. Recommendation

The undersigned respectfully recommends that the Court grant Defendants motion (ECF No. 28) and dismiss this case with prejudice because Valdez has abandoned the prosecution of his claims.

If the Court accepts this recommendation, this case will be dismissed.

Dated: January 30, 2023                     /s/ *Maarten Vermaat*
                                            MAARTEN VERMAAT
                                            U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).